1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  Richard Dale Stokley,                              )  No. CV-98-332-TUC-FRZ

10                  Petitioner,                       )
                                                      )  DEATH PENALTY CASE
                                                      )
11  v.                                                )
                                                      )
12  Dora B. Schriro, et al.,[1]                       )  **ORDER AND OPINION RE:**
                                                      )  **PROCEDURAL STATUS OF CLAIMS**
13                  Respondents.                      )
                                                      )
14  ──────────────────────────────────               )
                                                      )

15

16        Petitioner Richard Dale Stokley ("Petitioner"), a state prisoner under sentence of

17  death, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He

18  alleges that he was convicted and sentenced in violation of the United States Constitution.

19  (Dkt. 1.)[2]  This Order addresses procedural bar and other issues raised by Respondents'

20  answer to the petition.

21                  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

22        In 1992, Petitioner was convicted by a jury of two counts of kidnapping, one count

23  of sexual conduct with a minor under the age of fifteen, and two counts of premeditated first

24  degree murder in the deaths of two thirteen-year-old girls in a remote area in Southeast

25  ────────────────────

26

27  [1] Dora B. Schriro, Director of the Arizona Department of Corrections, is substituted
    for her predecessor pursuant to Fed. R. Civ. P. 25(d)(1).

28  [2] "Dkt." refers to documents in this Court's file.

Arizona. Cochise County Superior Court Judge Matthew W. Borowiec sentenced Petitioner to death for the murders and to various prison terms for the other counts. On direct appeal, the Arizona Supreme Court affirmed. See State v. Stokley, 182 Ariz. 505, 898 P.2d 454 (1995), cert. denied, 516 U.S. 1078 (1996).

Petitioner, represented by court-appointed counsel, Harriette Levitt, filed a petition for post-conviction relief ("PCR") pursuant to Rule 32 of the Arizona Rules of Criminal Procedure in January 1997. The petition raised two claims. Two months later, the PCR court summarily denied relief. Subsequently, Petitioner sought special action relief in the Arizona Supreme Court from a dispute concerning Levitt's continued appointment as counsel. In June 1997, the Arizona Supreme Court denied Petitioner's request to terminate Levitt's appointment but directed Levitt to file a supplemental PCR petition. That petition, raising six additional claims, was filed in October 1997 and denied by the PCR court in February 1998. On June 25, 1998, the Arizona Supreme Court summarily denied review of the PCR court's rulings.

Petitioner filed a Petition for Writ of Habeas Corpus in this Court on July 14, 1998. He subsequently filed an amended petition and a second amended petition. (Dkts. 20, 33.) Respondents filed an answer, limited by the Court's order to issues of exhaustion and procedural default. (Dkt. 44.) Briefing concluded in April 2000, after Petitioner filed a traverse, Respondents filed a reply, and Petitioner filed a sur-reply. (Dkts. 49, 59, 64.)

While the procedural status of Petitioner's claims was under advisement, the Ninth Circuit Court of Appeals issued a decision in Smith v. Stewart, 241 F.3d 1191 (9th Cir. 2001), that called into question Arizona's doctrine of procedural default. Due to the practice of bifurcating the briefing of procedural and merits issues then-employed by the District of Arizona in capital habeas cases, the Court, in the interest of judicial economy, deferred ruling on the procedural status of Petitioner's claims pending further review of Smith. (Dkt. 69.) In June 2002, the United States Supreme Court reversed the Ninth Circuit. Stewart v. Smith, 536 U.S. 856 (2002) (per curiam). Contemporaneously, the Supreme Court decided Ring v. Arizona, 536 U.S. 584 (2002), which found Arizona's sentencing scheme unconstitutional

because judges, not juries, determined the existence of the aggravating circumstances necessary to impose a death sentence.  The Court continued deferring ruling in this matter pending a determination whether <u>Ring</u> applies retroactively to cases on collateral review. The U.S. Supreme Court resolved that issue in June 2004.  <u>Schriro v. Summerlin</u>, 542 U.S. 348 (2004).

## PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT

Because this case was filed after April 24, 1996, it is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Woodford v. Garceau</u>, 538 U.S. 202, 210 (2003).  The AEDPA requires that a writ of habeas corpus not be granted unless it appears that the petitioner has exhausted all available state court remedies.  28 U.S.C. § 2254(b)(1); <u>see also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).  To properly exhaust state remedies, the petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848 (1999).

A claim is "fairly presented" if the petitioner has described the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim. <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982); <u>Picard v. Connor</u>, 404 U.S. 270, 277-78 (1971).[3]  Commenting on the importance of fair presentation, the United States Supreme Court has stated:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.  If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

---

[3] Resolving whether a petitioner has fairly presented his claim to the state court is an intrinsically federal issue to be determined by the federal court.  <u>Wyldes v. Hundley</u>, 69 F.3d 247, 251 (8th Cir. 1995); <u>Harris v. Champion</u>, 15 F.3d 1538, 1556 (10th Cir. 1994).

Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam).  Following Duncan, the Ninth Circuit has held that a state prisoner has not "fairly presented" (and thus exhausted) federal claims in state court unless he specifically indicated to that court that the claims were based on federal law.  See, e.g., Lyons v. Crawford, 232 F.3d 666, 669-70 (2000), as amended by 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury and ineffective assistance of counsel lacked  specificity and explicitness required to present federal claim); Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" insufficient to present federal claim); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion.").  A petitioner must make the federal basis of a claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir.1999), or by citing state cases that explicitly analyze the same federal constitutional claim, Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).  Such explicit fair presentation must be made not only to the trial or post-conviction court, but to the state's highest court.  Baldwin v. Reese, 541 U.S. 27, 32 (2004).  If a petitioner's habeas claim includes new factual allegations not presented to the state court, the claim may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court.  Vasquez v. Hillery, 474 U.S. 254, 260 (1986).

A habeas petitioner's claims may be precluded from federal review in either of two ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds.  Coleman, 501 U.S. at 729-30.  Second, a claim may be procedurally defaulted in federal court if the petitioner failed to present the claim in any forum and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  Coleman, 501 U.S. at 735 n.1.  This is often referred to as "technical" exhaustion because, although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy.  See Gray v. Netherland,

518 U.S. 152, 161-62 (1996) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him.").

Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may seek relief in post-conviction proceedings and raise federal constitutional challenges to their convictions or sentences in state court.  Rule 32.2 provides, in part:

> a. Preclusion.  A defendant shall be precluded from relief under this rule based upon any ground:
> . . . .
>
> (2)   Finally adjudicated on the merits on appeal or in any previous collateral proceeding;
>
> *(3)  That has been waived at trial, on appeal, or in any previous collateral proceeding.*
>
> b. Exceptions.  Rule 32.2(a) shall not apply to claims for relief based on Rules 32.1(d), (e), (f), (g) and (h).  When a claim under [these sub-sections] is to be raised in a successive or untimely post-conviction relief proceeding, the notice of post-conviction relief must set forth the substance of the specific exception and the reasons for not raising the claim in the previous petition or in a timely manner.  If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the notice shall be summarily dismissed.

Ariz. R. Crim. P. 32.2 (West 2003) (emphasis added).  Thus, pursuant to Rule 32.2(a)(3), petitioners may not be granted relief on any claim which was waived at trial, on appeal, or in a previous PCR petition.  Similarly, pursuant to Rule 32.4, petitioners must seek relief in a timely manner.  Only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition or was not presented in a timely manner will the preclusive effect of Rule 32.2 be avoided. Ariz. R. Crim. P. 32.2(a) (3), 32.4(a).

Therefore, in the present case, if there are claims which have not been raised previously in state court, the Court must determine whether Petitioner has state remedies currently available to him pursuant to Rule 32.  If no remedies are currently available, petitioner's claims are "technically" exhausted but procedurally defaulted.  Coleman, 501 U.S. at 732, 735 n.1.  In addition, if there are claims that were fairly presented in state court

but found defaulted on state procedural grounds, such claims also will be found procedurally defaulted in federal court so long as the state procedural bar was independent of federal law and adequate to warrant preclusion of federal review. Harris v. Reed, 489 U.S. 255, 262 (1989). A state procedural default is not independent if, for example, it depends upon an antecedent federal constitutional ruling. See Stewart v. Smith, 536 U.S. at 860. A state bar is not adequate unless it was firmly established and regularly followed at the time of application by the state court. Ford v. Georgia, 498 U.S. 411, 423-24 (1991).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. Reed v. Ross, 468 U.S. 1, 9 (1984). As a general matter, the Court will not review the merits of procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure to properly exhaust in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. Coleman, 501 U.S. at 735 n.1.

Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. at 753. Objective factors which constitute cause include interference by officials which makes compliance with the state's procedural rule impracticable, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and constitutionally ineffective assistance of counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice" is actual harm resulting from the alleged constitutional error or violation. Magby v. Wawrzaszek, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice resulting from a procedural default, a habeas petitioner bears the burden of showing not merely that the errors at his trial constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension. United States v. Frady, 456 U.S. 152, 170 (1982).

If a petitioner cannot meet the "cause and prejudice" standard, the Court still may consider the merits of procedurally defaulted claims if the failure to hear the claims would

constitute a "fundamental miscarriage of justice." <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992). The "fundamental miscarriage of justice" exception is also known as the actual innocence exception.   There are two types of claims recognized under this exception: (1) that a petitioner is "innocent of the death sentence," or, in other words, that the death sentence was erroneously imposed; and (2) that a petitioner is innocent of the capital crime.   In the first instance, the petitioner must show by clear and convincing evidence that, but for a constitutional error, no reasonable factfinder would have found the existence of any aggravating circumstance or some other condition of eligibility for the death sentence under the applicable state law.   <u>Id.</u> at 336.   In the second instance, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).   To establish the requisite probability, the petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." <u>Id.</u>   However:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

<u>Id.</u> at 324.

## HABEAS CLAIMS

Petitioner's second amended petition asserts federal constitutional violations based on the following issues:

A-1   Counsel's failure at sentencing to adequately investigate and prepare evidence of Petitioner's mental state as mitigation;

A-2   Counsel's failure at sentencing to adequately rebut "heinous, cruel or depraved" aggravating factor;

A-3   Counsel's failure at sentencing to adequately rebut the prosecution's bad character evidence;

B-1   Trial court's failure to consider and give effect at sentencing to evidence of Petitioner's mental and organic impairments, dysfunctional family history, good behavior while incarcerated, cooperation with police, potential for rehabilitation as mitigating factors, and the co-defendant's guilty plea and lesser sentence as mitigation;

B-2    Arizona Supreme Court's failure to consider and give effect at sentencing to evidence of Petitioner's mental and organic impairments, dysfunctional family history, good behavior while incarcerated, cooperation with police, potential for rehabilitation, and the co-defendant's guilty plea and lesser sentence as mitigating factors;

C      Imposition of death sentence where equally or more culpable co-defendant spared;

D      Imposition of "heinous, cruel or depraved" aggravating factor based on co-defendant's conduct and intent;

E      Insufficient evidence to support "heinous, cruel or depraved" aggravating factor;

F-1    Counsel's failure at trial to adequately investigate and prepare a mental state defense;

F-2    Counsel's failure to impeach witness James Robinson;

F-3    Counsel's failure to effectively cross-examine co-defendant Randy Brazeal;

G      State's failure to disclose information material to the defense regarding the co-defendant's involvement in a satanic cult;

H-1    Counsel's failure on appeal to argue in favor of the existence of specific mitigation evidence;

H-2    Counsel's incompetence on appeal for arguing a claim based on a non-existent felony-murder instruction and advancing the existence of irrelevant statutory mitigating factors;

I      Absence of a jury determination of aggravating factors under capital sentencing scheme;

J      Failure of capital sentencing scheme to channel sentencing discretion;

K      Arbitrary and irrational imposition of death penalty under Arizona law;

L      Execution by lethal injection; and

M      Execution after an extraordinarily lengthy period of incarceration.

## **DISCUSSION**

Respondents concede Claims C, G, and K are properly exhausted and entitled to review on the merits. However, Respondents assert that the balance of Petitioner's claims were not fairly presented in state court, or were found precluded on state law grounds, and are therefore procedurally barred from habeas review. Petitioner contends that all of his claims may be reviewed on the merits. For the reasons set forth below, the Court finds that

Claims A-2, A-3, B-2, D, F-1, F-2, F-3, H-1, H-2, and L are procedurally barred; Claims B-1, I, J, K, and M are plainly meritless; and Claims A-1, C, E, and G are properly exhausted and appropriate for review on the merits following supplemental briefing.

## A.   **Exhaustion Analysis**

**Claim A-1**

Petitioner asserts that counsel failed to adequately investigate Petitioner's mental state at the time of the crime and thereby failed to present compelling mitigation evidence at sentencing. (Dkt. 33 at 19-31.) In particular, Petitioner faults counsel's failure to obtain a neuropsychological exam after a pre-trial examiner found that Petitioner had organic brain damage. (Id. at 23.) Respondents contend this claim is barred from federal review because the PCR court expressly held it precluded under state law. (Dkt. 44 at 26.) The Court disagrees.

In his supplemental PCR in state court, Petitioner argued that counsel rendered ineffective assistance by ignoring "red flags" concerning Petitioner's psychological makeup, including his behavioral background, past head injuries and documented brain damage, as well as his history of depression, substance abuse, and borderline personality disorder. (Supp. ROA III at 6.)[4] He further complained that a psychiatric evaluation was never conducted for mitigation purposes prior to sentencing. (Id.) In denying the claim, the PCR court stated:

> Claim B, alleging ineffective representation for failure to adequately argue Stokley's alleged mental incapacity as mitigation for sentencing purposes, is

---

[4] "ROA I" refers to the six-volume record on appeal prepared for Petitioner's direct appeal to the Arizona Supreme Court (Case No. CR-92-278-AP). "ROA II" refers to the two-volume record on appeal prepared for Petitioner's petition for review of the denial of PCR relief. (Case No. CR-97-0287-PC). "ROA III" refers to the one-volume record on appeal prepared as a supplemental record for Petitioner's petition for review of the denial of PCR relief (Case No. CR-97-0287-PC). "AP doc." and "SA doc." refer to the documents filed in the Arizona Supreme Court during Petitioner's direct appeal (Case No. CR-92-0278-AP) and petition for special action (Case No. CV-97-0203-SA), respectively. "RT" refers to Reporter's Transcript. The original trial and sentencing transcripts as well as certified copies of the various records on appeal were provided to this Court by the Arizona Supreme Court. (Dkt. 68.)

1
2
3
4

precluded under Rule 32.2(a)(2) and A.R.S. § 13-4232(A)(2) because the Arizona Supreme Court rejected the factual basis of this claim on direct appeal.  Moreover, Stokley offers nothing specific nor material concerning his mental condition that was not before this Court at sentencing or considered when the appellate court conducted its independent review.  Thus, this claim is also precluded for lack of sufficient argument, and it is meritless for lack of a showing of prejudice.

5
6
7
8
9
10

(Id. at 54-55.)  The PCR court clearly ruled on the merits of Petitioner's claim and, therefore, Petitioner is not precluded from federal habeas review of this claim.  See Poland (Patrick) v. Stewart, 169 F.3d 573, 578 (9th Cir. 1999) (noting that a claim found precluded by Ariz. R. Crim. P. 32.2(a)(2) appears to be a "classic exhausted claim").  Accordingly, Claim A-1 will be addressed on the merits.

11
12
13
14
15
16
17
18
19
20
21
22
23
24

**Claims A-2 and A-3**

Petitioner asserts ineffectiveness based on counsel's failure to adequately rebut one of the aggravating factors and the prosecution's "bad character" evidence.  Petitioner contends these claims are properly exhausted because they are not fundamentally different than Claim A-1.  The Court disagrees.  Claims A-2 and A-3 assert distinct factual theories of ineffectiveness separate from that alleged in Claim A-1.  Consequently, the presentation of Claim A-1 did not fairly alert the state court to the factual bases underlying Claims A-2 and A-3.  See Carriger v. Lewis, 971 F.2d 329, 333-34 (9th Cir. 1992) (en banc) (treating distinct failures by trial counsel as separate claims for purposes of exhaustion and procedural default); Matias v. Oshiro, 683 F.2d 318, 319-20 & n.1 (9th Cir. 1982) (finding no fair presentation of eight grounds of ineffectiveness not raised in state court); Flieger v. Delo, 16 F.3d 878, 885 (8th Cir. 1994) (raising specific claims of ineffectiveness in state court does not exhaust all such claims for federal habeas review); cf. Strickland v. Washington, 466 U.S. 668, 690 (1984) (requiring identification of the specific "acts or omissions" of counsel and a determination of whether those acts are outside the range of competent assistance).

25
26
27

If Petitioner were to return to state court now and attempt to litigate these issues, the claims would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the

28

1    Arizona Rules of Criminal Procedure because none fall within an exception to preclusion.[5]

2    See Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).  Therefore, these allegations are "technically"

3    exhausted but procedurally defaulted because Petitioner no longer has an available state

4    remedy.  Coleman, 501 U.S. at 732, 735 n.1.  Claims A-2 and A-3 will be procedurally

5    barred absent a showing of cause and prejudice, or a fundamental miscarriage of justice.

6    **Claim B-1**

7    Petitioner asserts that the sentencing judge failed to consider and give effect to

8    proffered mitigation evidence and that this claim was exhausted on direct appeal.

9    Respondents contend that on direct appeal Petitioner did not challenge the "legal scope of

10   the sentencing court's consideration of the proffered mitigation evidence but only the

11   'adequacy' of that review, i.e., the unfavorable result."  (Dkt. 44 at 30.)  The Court agrees.

12   In his Opening Brief, Petitioner included an argument entitled, "MITIGATING

13   CIRCUMSTANCES WERE NOT OUTWEIGHED BY AGGRAVATING FACTORS IN

14   APPELLANT'S CASE."  (Opening Br. at 34.)  In the body of the argument, Petitioner

---

16   [5] To the extent the Court finds throughout this Order that Petitioner does not have an
17   available remedy in state court, Petitioner does not assert the application of any of the
     preclusion exceptions. See Ariz. R. Crim. P. 32.2(b)(2); 32.1(d)-(h). Further, Petitioner does
18   not argue that any of the claims are of the type that cannot be waived absent a personal
     knowing, voluntary and intelligent waiver. Cf. Cassett v. Stewart, 406 F.3d 614, 622-23 (9th
19   Cir. 2005), cert. denied 126 S. Ct. 1336 (2006) (addressing waiver because raised by
20   petitioner).  The Court finds there is no available remedy in state court for these claims
     pursuant to Rule 32.2(a)(3) and they do not fall within the limited framework of claims
21   requiring a knowing, voluntary and intelligent waiver before the application of a preclusion
     finding. See Ariz. R. Crim. P. 32.2(a)(3) cmt. (West 2004) (noting that most claims of trial
22   error do not require a personal waiver); Stewart v. Smith, 202 Ariz. 446, 449, 46 P.3d 1067,
23   1070 (2002) (identifying the rights to counsel,  to a jury trial and to a 12-person jury under
     the Arizona Constitution as the type of claims that require personal waiver); see also State
24   v. Espinosa, 200 Ariz. 503, 505, 29 P.3d 278, 280 (Ct. App. 2001) (withdrawal of plea offer
25   in violation of due process not a claim requiring personal waiver); but cf. Cassett, 406 F.3d
     at 622-23 (finding claim not defaulted because unclear whether personal waiver would be
26   required under state law).  Additionally, if a new ineffectiveness allegation is raised in a
27   successive petition, the claim in the later petition will be precluded automatically, without
     review of the constitutional magnitude of the claim. See Smith, 202 Ariz. at 450, 46 P.3d at
28   1071.  Because Petitioner raised Claim A-1 in his first PCR proceeding, Claims A-2 and A-3
     are necessarily precluded.

1    identified statutory and non-statutory mitigating factors and argued that had "the trial court

2    conducted a proper review of the factors mitigating against imposition of the death penalty,

3    it is clear that Appellant would have been sentenced instead to life imprisonment." (Id. at

4    38.) Petitioner did not assert a violation of any federal constitutional provisions and did not

5    cite any relevant federal case law, such as Lockett v. Ohio or Eddings v. Oklahoma, which

6    hold that "the Eighth and Fourteenth Amendments require that the sentencer . . . not be

7    precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or

8    record and any of the circumstances of the offense that the defendant proffers as a basis for

9    a sentence less than death." Eddings, 455 U.S. 104, 110 (1982) (quoting Lockett, 438 U.S.

10   586, 604 (1978)) (emphasis in original). Rather, Petitioner argued only that the available

11   mitigating evidence outweighed the aggravating factors and that he should have been

12   sentenced to life imprisonment. This was insufficient to fairly present a claim that the

13   sentencing judge unconstitutionally refused to consider mitigating evidence.

14        Petitioner argues that, even if not fairly presented, the Arizona Supreme Court actually

15   considered Claim B-1 because it addressed each proffered mitigating factor in its decision,

16   determining that some were not mitigating and that none warranted leniency. Stokely, 182

17   Ariz. at 468-74, 868 P.2d at 519-25. This, Petitioner argues, amounted to an implicit, but

18   erroneous, determination by the state high court that the Eighth and Fourteenth Amendments

19   permit "narrowing" and "elimination" of mitigating evidence. The Court disagrees.

20   Nowhere in the Arizona Supreme Court's decision does it address, as a matter of federal

21   constitutional law, a refusal by the sentencing judge to consider specific categories of

22   mitigation evidence. Therefore, the claim was not actually exhausted on the merits by the

23   Arizona Supreme Court.

24        Finally, Petitioner argues that the claim was exhausted vis-a-vis the state supreme

25   court's independent sentencing review. The Arizona Supreme Court, through its

26   jurisprudence, has repeatedly stated that it independently reviews each capital case to

27   determine whether the death sentence is appropriate. Stokely, 182 Ariz. at 516 898 P.2d at

28   465. In conducting this review, the court reviews the record regarding aggravation and

1  mitigation findings, and then decides independently whether the death sentence should be
2  imposed.  State v. Brewer, 170 Ariz. 486, 493-94, 826 P.2d 783, 790-91 (1992).  The court
3  also determines "whether the sentence of death was imposed under the influence of passion,
4  prejudice, or any other arbitrary factors," State v. Richmond, 114 Ariz. 186, 196, 560 P.2d
5  41, 51 (1976), sentence overturned on other grounds, Richmond v. Cardwell, 450 F. Supp.
6  519 (D. Ariz. 1978), and will address sentencing-related issues even if not directly raised in
7  the appeal.  See, e.g., State v. McKinney, 185 Ariz. 567, 581, 917 P.2d 1214, 1228 (1996)
8  (sua sponte striking application of (F)(2) aggravating factor); State v. Stuard, 176 Ariz. 589,
9  605, 863 P.2d 881, 897 (1993) (sua sponte finding defendant's psychiatric condition
10  sufficiently substantial to warrant leniency).  Arguably, the court's review rests on both state
11  and federal grounds.  See Brewer, 170 Ariz. at 493, 826 P.2d at 790 (finding that statutory
12  duty to review death sentences arises from need to ensure compliance with constitutional
13  safeguards imposed by the Eighth and Fourteenth amendments); State v. Watson, 129 Ariz.
14  60, 63, 628 P.2d 943, 946 (1981) (discussing Gregg v. Georgia, 428 U.S. 153 (1976) and
15  Godfrey v. Georgia, 446 U.S. 420 (1980) and stating that independent review of death
16  penalty is mandated by the U.S. Supreme Court and necessary to ensure against arbitrary and
17  capricious application).

18       The pivotal issue here is whether the state court's independent sentencing review
19  exhausted Claim B-1.  Petitioner references no authority suggesting that the scope of
20  Arizona's independent sentencing review encompasses any and all constitutional error at
21  sentencing, and this Court has found none.  Rather, it appears from Brewer that the state
22  court's review is limited to ensuring that imposition of a death sentence rests on permissible
23  grounds.  Brewer, 170 Ariz. at 494, 826 P.2d at 791; see also State v. Watson, 129 Ariz. at
24  63, 628 P.2d at 946; cf. Nave v. Delo, 62 F.3d 1024 (8th Cir. 1995) (holding claim of
25  unconstitutional sentencing instruction outside scope of Missouri Supreme Court's
26  mandatory capital sentencing review).  Whether Arizona's independent review exhausts a
27  federal constitutional challenge to a trial court's alleged failure to consider and weigh
28  specific mitigation evidence is an open question in the Ninth Circuit.  Cf. Beaty v. Stewart,

1    303 F.3d 975, 987 (9th Cir. 2002).  Rather than resolve this difficult procedural issue, the

2    Court finds it judicially expedient to address Claim B-1 on the merits.  See 28 U.S.C. §

3    2254(b)(2); Rhines v. Weber, 125 S. Ct. 1528, 1535 (2005) (holding that a stay is

4    inappropriate in federal court to allow claims to be raised in state court if they are subject to

5    dismissal under § 2254 (b)(2) as "plainly meritless").

6         The Eighth and Fourteenth Amendments require a sentencer to consider "any aspect

7    of a defendant's character or record and any of the circumstances of the offense" that a

8    defendant proffers as a basis for a sentence less than death.  Eddings, 455 U.S. at 110

9    (quoting Lockett, 438 U.S. at 604).  However, it is left to the sentencer to determine the

10   weight to accord such evidence.  Id. at 114-15.  For purposes of federal habeas review, a

11   sentencing court in Arizona "need not exhaustively analyze each mitigating factor 'as long

12   as a reviewing federal court can discern from the record that the state court did indeed

13   consider all mitigating evidence offered by the defendant.'" Moormann v. Schriro, 426 F.3d

14   1044, 1055 (9th Cir. 2005), cert. denied 126 S. Ct. 2984 (2006) (quoting Clark v. Ricketts,

15   958 F.2d 851, 858 (9th Cir. 1991), and summarily dismissing Eddings claim where

16   sentencing court explicitly stated it would "consider all evidence presented at trial, in the pre-

17   sentencing report, and at sentencing in rendering its sentencing decision"); see also Jeffers

18   v. Lewis, 38 F.3d 411, 418 (9th Cir. 1994) (rejecting Eddings/Lockett claim where

19   sentencing court stated it considered all evidence presented in trial, post-trial hearings, and

20   the presentencing report).

21        In this case, the trial court held a four-day aggravation/mitigation hearing in June

22   1992.  At sentencing on July 14, 1992, the trial court specifically indicated that it had

23   considered all of the evidence presented in mitigation:

24            This court has considered the testimony and evidence presented at trial
              and the separate sentencing hearing, and the memoranda, exhibits, and
25            arguments of counsel.  A presentence report was prepared, but on request of
              counsel for the defendant, it was not read; its contents remain unknown to this
26            court.

27   (ROA I at 1281; RT 7/14/92 at 23.)  In its special verdict, the sentencing court expressly

28   addressed each mitigating circumstance urged by Petitioner, including leniency, lack of prior

felony record, cooperation with law enforcement, unequal sentence of the co-defendant, alcohol abuse and intoxication, ability for rehabilitation, difficulty in early years and prior home life, mental condition and behavior disorders, good character, good behavior while incarcerated, and lack of future dangerousness, but concluded that none were mitigating. (ROA I at 1288-91; RT 7/14/92 at 34-42.) Similarly, the Arizona Supreme Court considered the proffered evidence, including, at the request of appellate counsel, the presentence report not considered by the trial judge.  Although the appellate court found some of the proven factors to be mitigating, it concluded that none was sufficiently substantial to call for leniency.  Id.  On this record, it is evident that the state courts considered the evidence proffered by Petitioner; the federal constitution does not require that such evidence be found mitigating.  Petitioner is not entitled to relief on Claim B-1, and it will be dismissed with prejudice.

**Claim B-2**

Petitioner asserts that the Arizona Supreme Court adopted the sentencing court's erroneous findings that he had not been significantly impaired at the time of the crime, and refused to consider, as a matter of law, any mitigating evidence related to Petitioner's troubled family background, good behavior in jail, cooperation with police, and personality disorder. (Dkt. 33 at 40, 43.)  Respondents contend Petitioner failed to exhaust any claim of error by the Arizona Supreme Court.  (Id. at 38.)  The Court agrees.

Following the Arizona Supreme Court's decision, Petitioner filed a motion for reconsideration.  (AP doc. 37.)  He argued the court had erred in finding that his arrest history negated any claims of peacefulness and law-abiding nature.  (Id. at 2.)  He further asserted it had been inappropriate for the court to hold him accountable for past anti-social acts, which he was incapable of controlling due to brain damage, and to fail to fully consider his capacity for rehabilitation.  (Id.)  Petitioner plainly failed to alert the Arizona Supreme Court to the operative facts and federal constitutional theory underlying the instant habeas claim.

To satisfy the fair presentation requirement, Petitioner was obligated to give the

1  Arizona state courts at least one "*fair* opportunity to act on [his] claims."  <u>O'Sullivan</u>, 526

2  U.S. at 844.  Because Claim B-2 alleges error occurring during the Arizona Supreme Court's

3  sentencing review, that review itself did not provide the court notice of, or an opportunity to

4  correct, the alleged error.  Petitioner filed a motion for reconsideration, but neglected to use

5  that opportunity to fairly present this claim to the Arizona Supreme Court.  <u>See</u> <u>Correll v.</u>

6  <u>Stewart</u>, 137 F.3d 1404, 1418 (9th Cir. 1998) (finding procedural default of claim based on

7  error of the Arizona Supreme Court where petitioner failed to file motion for reconsideration,

8  which is "an avenue of relief that the Arizona Rules of Criminal Procedure clearly outline").

9  Nor did Petitioner raise this claim in his PCR.  Thus, Petitioner failed to fairly present the

10  claim to the Arizona Supreme Court as required for exhaustion.  <u>See</u> <u>Bell v. Cone</u>, 543 U.S.

11  447, 451 n.3 (2005) (stating that a petitioner must present every claim to the state's highest

12  court if there is an available means).

13       Petitioner is now precluded by Rules 32.2(a)(3) and 32.4 from obtaining relief on

14  Claim B-2 in a PCR proceeding in state court.  <u>See</u> Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h);

15  <u>supra</u> note 5.  Similarly, the fifteen-day deadline for the filing of a motion for reconsideration

16  in the Arizona Supreme Court is long past.  <u>See</u> Ariz. R. Crim. P. 31.18(b).  Thus, Claim B-2

17  is technically exhausted but procedurally defaulted, and will be barred absent a showing of

18  cause and prejudice or a fundamental miscarriage of justice.

19       **Claims D and L**

20       Petitioner asserts that Claims D (finding of "especially heinous, cruel or depraved"

21  aggravating factor based on co-defendant's conduct and intent) and L (execution by lethal

22  injection) were presented to the state court during the PCR proceedings.  Specifically,

23  Petitioner asserts these claims were included in a motion for reconsideration filed by

24  substitute PCR counsel (<u>see</u> discussion <u>infra</u> on "Cause and Prejudice" for background

25  regarding appointment of substitute PCR counsel).  Regardless, Petitioner did not present

26  these claims to the Arizona Supreme Court in either the initial petition for review or the

27  supplemental petition for review from the denial of PCR relief.  (<u>See</u> ROA II at 312.)  In

28  capital cases, claims must be fairly presented to the Arizona Supreme Court.  <u>See</u> <u>Swoopes</u>

1    v. Sublett, 196 F.3d 1008, 1011 (9th Cir. 1999) (applying O'Sullivan v. Boerckel, 526 U.S.
2    at 838).

3         The Court concludes that Claims D and L are technically exhausted but procedurally
4    defaulted because they do not allege facts or law which would exempt them from preclusion
5    and untimeliness pursuant to Rules 32.2(a)(3) and 32.4(a) were Petitioner to return to state
6    court now.  See Ariz. R. Crim. P. 32.2(b), 32.1(d)-(h); supra note 5.  Absent a showing of
7    cause and prejudice or miscarriage of justice to excuse the default, Claims D and L will be
8    procedurally barred.

9    **Claim E**

10        Petitioner alleges that insufficient evidence supported the finding of the "especially
11   heinous, cruel or depraved" aggravating factor.  Respondents concede this claim was raised
12   on direct appeal but argue it was presented entirely on state-law grounds.  (Dkt. 44 at 32.)
13   Petitioner counters that the claim was either expressly or implicitly rejected on the merits by
14   the Arizona Supreme Court during its independent review.  (Dkt. 49 at 60.)  The Court
15   agrees.

16        As already set forth, the Arizona Supreme Court has a duty to independently review
17   the propriety of a capital defendant's sentence to ensure that it rests on constitutionally
18   permissible grounds.  See Brewer, 170 Ariz. at 493, 826 P.2d at 790; Watson, 129 Ariz. at
19   63, 628 P.2d at 946.  Although the scope of this review is limited, the Court finds that a claim
20   alleging unconstitutional application of an enumerated aggravating factor falls within the
21   narrow class of claims implicitly rejected by the Arizona Supreme Court when it affirmed
22   Petitioner's sentence.  See Beam v. Paskett, 3 F.3d 1301, 1306 (9th Cir. 1993), overruled on
23   other grounds by, Lambright v. Stewart, 191 F.3d 1181 (9th Cir. 1999) (holding that, because
24   the Idaho Supreme Court was statutorily required to review the petitioner's capital sentence
25   to determine if it was infected by "passion, prejudice, or any other arbitrary factor," that court
26   must have implicitly ruled on the constitutionality of the trial judge's application of the
27   "continuing threat" factor to the petitioner).  Accordingly, Claim E will be addressed on the
28   merits.

**Claims F-1, F-2, and F-3**

Petitioner acknowledges that Claim F-1, alleging counsel's ineffectiveness at trial for failing to investigate and present an adequate mental state defense, was not actually presented in state court but nonetheless asserts exhaustion because it "is, in substance, 'identical' to the allegations asserted against trial counsel at sentencing." (Dkt. 49 at 61.) Petitioner further argues that the allegations of ineffectiveness in Claims F-2 and F-3 are appropriate for review on the merits because they do not fundamentally alter the "underlying claim of ineffective assistance" in F-1 that was exhausted in state court.  The Court disagrees.

A claim based on counsel's performance at sentencing is patently different than a claim based on counsel's performance at trial.  Petitioner was required to fairly present in state court the factual basis of the acts alleged to constitute ineffective assistance.  "A thorough description of the operative facts before the highest state court is a necessary prerequisite to satisfaction of the standard of O'Sullivan and Harless that 'a federal habeas petitioner [must] provide the state courts with a 'fair opportunity' to apply controlling legal precedent to the facts bearing upon his constitutional claim.'" Kelly v. Small, 315 F.3d 1063, 1069 (9th Cir. 2003) (quoting Harless, 459 U.S. at 6); see also Moormann v. Schriro, 426 F.3d at 1056 (noting that a petitioner cannot add unrelated alleged instances of ineffectiveness to any ineffectiveness claim raised in state court); Carriger v. Lewis, 971 F.2d at 333-34 (treating distinct failures by trial counsel as separate claims for exhaustion and procedural default).

Here, it is undisputed that Petitioner did not identify to the state courts that his rights to the effective assistance of counsel were violated because his trial counsel failed to investigate, prepare and present a "mental-state" conviction phase defense negating premeditation.  Rather, Claim F-1 is a new allegation of ineffectiveness raised here for the first time.  Petitioner contends, however, that he alerted the state courts to his claim that his rights to the effective assistance of counsel at the conviction phase were violated by alleging that trial counsel failed to adequately argue his "mental incapacity" as a mitigating factor at the sentencing phase.  Thus, the determinative question is whether the conviction phase

1   mental defense issue fundamentally alters the ineffective assistance of counsel claim that was

2   presented to the state courts.  This Court concludes that it does.

3          Although the legal basis for the claim of ineffective assistance of counsel essentially

4   remains the same, the additional facts "fundamentally alter" the gravamen of the claim and

5   place it in a significantly different posture.  Cf. Weaver v. Thompson, 197 F.3d 359, 364 (9th

6   Cir. 1999) (holding that jury misconduct claim was properly exhausted when petitioner

7   presented incidents of improper jury contact that differed in number, but not in kind, from

8   those presented to state courts).  The essential factual theory – that counsel failed to present

9   an effective *conviction phase defense*, as opposed to presenting an adequate *mitigation*

10  *argument*, are not the same.  Indeed, a claim based on counsel's failure to present evidence

11  of an impulsive character trait to negate premeditation under State v. Christensen, 129 Ariz.

12  32, 628 P.2d 580 (1981) (see discussion infra regarding "Fundamental Miscarriage of

13  Justice"), is both factually *and* legally distinct from a claim that counsel failed to investigate

14  and present evidence to establish diminished capacity to control conduct or to appreciate the

15  difference between right and wrong under A.R.S. 13-703(G)(1), even if both claims involve

16  allegations of brain damage.  Petitioner did not adequately exhaust Claim F-1, F-2 or F-3.

17         The Court concludes that Claims F-1, F-2, and F-3 are technically exhausted but

18  procedurally defaulted because they do not allege facts or law which would exempt them

19  from preclusion and untimeliness pursuant to Rules 32.2(a)(3) and 32.4(a) were Petitioner

20  to return to state court now.  See Ariz. R. Crim. P. 32.2(b), 32.1(d)-(h); supra note 5; see also

21  Smith, 202 Ariz. at 450, 46 P.3d at 1071 (stating that new ineffectiveness allegations raised

22  in a successive petition are precluded automatically if the petitioner raised separate

23  ineffectiveness allegations in a first petition).  The Court will not address Claims F-1, F-2 and

24  F-3 on the merits absent a showing of cause and prejudice or a fundamental miscarriage of

25  justice.

26  **Claims H-1 and H-2**

27         Petitioner concedes these claims concerning appellate counsel's representation were

28  not presented in state court, but asserts generally they are not defaulted because he has an

available remedy in state court to exhaust them. (Dkt. 49 at 67.) However, he does not assert the application of any of Arizona's preclusion exceptions for the filing of a successive PCR petition. The Court finds that Claims H-1 and H-2 are technically exhausted but procedurally defaulted because they do not allege facts or law which would exempt them from preclusion and untimeliness pursuant to Rules 32.2(a)(3) and 32.4(a) were Petitioner to return to state court now. See Ariz. R. Crim. P. 32.2(b)(2); 32.1(d)-(h); supra note 5; see also Smith, 202 Ariz. at 450, 46 P.3d at 1071. They will not be addressed on the merits absent a showing of cause and prejudice or a fundamental miscarriage of justice.

**B.      Cause and Prejudice**

Throughout his pleadings, Petitioner asserts that any default of his claims is attributable to PCR counsel, Harriette Levitt. Recognizing that ineffectiveness of PCR counsel cannot constitute cause, see Coleman, 501 U.S. at 752-55, Petitioner argues instead that cause rests on the separate question of whether a client is bound by a lawyer's default where there is an absence of an attorney-client relationship. (Dkt. 49 at 6-7.) Specifically, Petitioner asserts that Levitt's default should not be attributed to him because she acted outside the agency relationship and thus her errors must be construed as external impediments that prevented Petitioner's compliance with state procedural rules. (Id. at 7-8, 15.) Petitioner also asserts that cause is established because the state courts "forced" him to accept PCR counsel with whom he had an "irreconcilable conflict" (id. at 13), and violated his right to due process by denying him a "meaningful ability" to utilize state PCR procedures to test the legality of his conviction and sentence (id. at 20 n.13). The Court is not persuaded.

**Relevant Factual Background**

On April 17, 1996, the trial court appointed Harriette Levitt to represent Petitioner in his PCR proceedings. (ROA II at 21.) The PCR petition was originally due August 17, 1996. On September 27, 1996, Levitt filed an untimely motion requesting a sixty-day extension in order "to complete her review of the trial file and transcripts, investigate the case

1   and prepare the Rule 32 petition."[6] (Id. at 22.)  The PCR court granted the motion and reset

2   the deadline to December 2, 1996.  (Id. at 23.)  On November 7, 1996, Levitt filed a second

3   continuance motion, and the court extended the deadline to January 8, 1997.  (Id. at 24-26.)

4   On that date, Petitioner filed a petition that raised only two claims. (Id. at 28-35.)

5           Following receipt of the PCR petition, on January 15, 1997, Petitioner wrote a letter

6   to Denise Young, then an attorney with the Arizona Capital Representation Project,

7   complaining that he had "been 'dump-trucked' on [his] Rule 32, and . . . need[ed] help in the

8   worst way." (Id. at 285.) Petitioner characterized the PCR petition as "rushed," "negligent,"

9   and "quite a joke."  (Id.)  He explained that the petition consisted of "2 pretty lame issues

10  which are laid out entirely . . . on 3 pages."  (Id.)  Petitioner estimated that, out of the 240

11  days total, Levitt had spent only 71 days working on his petition, and that she "made very

12  little effort to even familiarize herself with [his] case, much less did she try to do an effective

13  appeal."  (Id.)  Petitioner asked Young whether there was any way to "file a motion to stop

14  this mess and get an attorney who will care enough to do a competent job."  (Id. at 286.)  He

15  characterized the situation as "ineffective assistance of counsel in stereo."  (Id.)

16          On February 15, 1997, Petitioner wrote a similar letter to the PCR court.  (Id. at 288-

17  89.)  He explained to the court that he telephoned Levitt on January 31, 1997, and told her

18  that he was "concerned and dissatisfied with her work and the brevity of this 6-page, 2 issue

19  Rule 32." (Id. at 289.)  Petitioner stated that Levitt had explained the brevity of the petition

20  by claiming that "[s]ome [Rule 32 petitions] are even briefer than that."  According to

21  Petitioner, Levitt further told him that his "trial attorneys didn't make any mistakes" and

22  "[t]here are no more issues that can be raised in my case."  (Id.)  Finally, Petitioner claimed

23  that Levitt stated, "[t]his Rule 32 won't take long in the courts, and that then [Petitioner's]

24  case will go into federal court where it will lose," and he would "probably be executed in 2

25  or 3 years."  (Id.)  Petitioner expressed his opinion that "it [is] evident that my present appeal

26  has been handled with a lick and a promise, rather than being given the conscientious

27

28          [6] Levitt noted that the request for an extension of time was not timely filed "due to a
    clerical error." (Id.)

1    analysis and preparation which should be applied." (Id.) He then quoted a legal article,

2    which set forth the steps post-conviction counsel should undertake in order to "represent

3    adequately a defendant sentenced to death in a first post-conviction proceeding." (Id.) Based

4    on the article, Petitioner asserted that "[t]he Rule 32 prepared by Ms. Levitt is a disgrace, and

5    a good example of the very 'ineffective assistance of counsel' which it is meant to relieve."

6    (Id.) Petitioner closed his letter by "ask[ing] the Court to stop this Rule 32 petition and

7    appoint an attorney who will apply his or her self and try to do a competent job in this

8    matter." (Id.) According to Petitioner, the trial judge refused to read the letter and had his

9    secretary transmit it to Levitt for handling. (Dkt. 49 at 12.)

10    On March 6, 1997, the PCR court denied the petition. On March 10, 1997, Levitt

11    filed a request to withdraw from the case, citing complaints from Petitioner about her

12    performance, "irreconcilable differences," and a "complete breakdown of the attorney/client

13    relationship." (ROA II at 83-84.) Levitt suggested that new counsel be appointed to

14    represent Petitioner so that the PCR petition could be "decided on the merits, without

15    collateral issues relating to the Rule 32 attorney's effectiveness." (Id.) The PCR court

16    permitted Levitt to withdraw and appointed attorney Carla Ryan to represent Petitioner "for

17    the completion of the Rule 32 petition." (Id. at 85.)

18    Shortly after Ryan was appointed, on March 17, 1997, counsel for the State of

19    Arizona filed a motion to vacate the order replacing Levitt or, alternatively, to clarify the

20    limited role of her substitute, Ryan. (Id. at 94-96.) The State argued that the PCR court

21    should reinstate Levitt as counsel and vacate the appointment of Ryan because "this Court

22    has already denied the Rule 32 petition by final order, and because there is no justification

23    [for] removing one attorney who has already reviewed the record (at Cochise County's

24    expense) for another who has not, simply because [Petitioner] is dissatisfied with the way

25    Ms. Levitt has handled the case so far." (Id. at 95.) The State further argued that the only

26    remaining task in the PCR proceeding is "for counsel who filed the petition to take steps

27    toward seeking reconsideration and/or review by the Arizona Supreme Court," which

28    required "neither the approval nor the participation of [Petitioner]." (Id.) In the alternative,

1    the State asked the court to "expressly limit [Ryan's] appointment to pursuing the remedies

2    specified under Rule 32.9(a) and (c) (motion for rehearing and petition for review)," on the

3    grounds that "[t]he rules do not allow" Ryan to supplement the already-adjudicated petition

4    in some manner.  (Id. at 96.)

5         In response, Ryan argued that the State lacked standing to make requests regarding

6    the appointment of PCR counsel.  (Id. at 114.)  Ryan further argued that Petitioner was

7    entitled to the effective assistance of counsel in his PCR proceeding, and that the

8    appointment of substitute counsel was critical in this case because "the focus of a conflict

9    between an attorney and a client is not whether counsel is legally competent, but the

10   relationship itself." (Id. at 116-18.)  Finally, Ryan argued that Petitioner was entitled to seek

11   to amend or supplement his PCR petition.  (Id. at 118.)  Ryan also filed motions for the

12   appointment of co-counsel and to extend the time for filing a motion for reconsideration of

13   the denial of the PCR petition.  (Id. at 98-102.)

14        In response to Ryan's motion for co-counsel, the State argued that her request

15   evidenced her intent "to ignore the finality of this Court's order denying the Rule 32

16   petition," because "[s]he requests additional time and the appointment of co-counsel to

17   'complete' the petition because 'numerous valid [unspecified] issues were not raised,' and

18   because . . . Levitt allegedly was 'ineffective' as Rule 32 counsel." (Id. at 110.)  The State

19   argued that amendments to a Rule 32 petition are not permitted without leave of court and

20   a showing of extraordinary circumstances, and that any new claims would be precluded by

21   Rule 32.2(a)(2) in any event.  The State also contended that, because there is no right to the

22   effective assistance of counsel in Rule 32 proceedings, Petitioner's and Ryan's opinions

23   about Levitt's performance were irrelevant, as were Levitt's reasons for requesting

24   withdrawal.  (Id.)

25        In reply to the State's opposition to the motion for co-counsel, Ryan again asserted

26   that Petitioner was entitled to the effective assistance of counsel in his PCR proceeding and

27   therefore she should be afforded "a meaningful opportunity to re-evaluate the prior

28   proceedings," including Petitioner's trial and direct appeal.  (Id. at 155.)  Ryan also filed a

1    motion to disqualify the Attorney General's office from the case or, alternatively, to hold the

2    office in contempt on the basis of prosecutorial misconduct for personally attacking, and

3    making unsupported accusations against, her.  (Id. at 121-28.)  In response, the State argued

4    that its objections to Ryan's representation were made in a good faith attempt to keep the

5    PCR proceeding "on track."  (Id. at 234.)

6        On April 16, 1997, Ryan filed a motion for reconsideration of the dismissal of the

7    PCR petition and a request for leave to amend that petition.  (Id. at 245-65.)  The thrust of

8    the motion to amend was that "Petitioner received ineffective assistance of counsel on his

9    original petition" and counsel's "deficient performance prejudiced" Petitioner.  (Id. at 250-

10   59.)  Ryan argued that Levitt had provided ineffective assistance of counsel in Petitioner's

11   PCR proceeding because she:  (i) filed a petition "that consisted of a little over 3 pages of

12   legal argument and raised only two issues"; (ii) claimed to have been working on Petitioner's

13   PCR petition on October 4, 1996, even though she did not receive the trial transcripts until

14   October 31, 1996; (iii) spoke only once with Petitioner over the telephone and never visited

15   him prior to filing the PCR petition; and (iv) did not conduct an investigation or request

16   funds for experts or investigators.  (Id. at 250-51.)  Petitioner argued that he was prejudiced

17   by Levitt's deficient performance because "she raised only two fairly minor issues," whereas

18   Ryan had identified thirty-one "potential issues" that "[i]ndividually and/or cumulatively . . .

19   would have changed the outcome in this case."  (Id. at 255-60.)

20       On April 29, 1997, the PCR court rescinded its order appointing Ryan and reappointed

21   Levitt.  In doing so, it adopted the State's argument that Levitt should remain on the case

22   because there remained only a motion to reconsider and a petition for review to prepare.  (Id.

23   at 296.)  The court denied Petitioner's request for the appointment of co-counsel on the

24   ground that the PCR petition "has been completed" and further held that counsel for the State

25   had not engaged in prosecutorial misconduct.  (Id.)

26       On May 7, 1997, after having been reinstated as counsel by the PCR court, Levitt filed

27   a Petition for Review ("PR") of the denial of Petitioner's PCR petition in the Arizona

28   Supreme Court.  (Id. at 301-15.)  The PR requested review of both the summary denial of the

1   PCR petition and rescission of the order that substituted Ryan as PCR counsel.  (Id. at 306.)

2   After addressing the issues raised in the PCR petition, Levitt included a discussion titled,

3   "Issues Raised By Carla Ryan."  (Id. at 310-13.)  There, Levitt explained that "[t]he lion's

4   share" of filings by Ryan constituted "an attack on the effectiveness of [Levitt], all of which

5   is meritless."  (Id. at 310.)

6        Levitt acknowledged that Ryan's motion for reconsideration included a "laundry list"

7   of possible claims.  (Id. at 311.)  However, she characterized them as "inappropriate and

8   largely meritless" and suggested the claims fell into four different categories: (i) those that

9   "were already raised, either on appeal or in the Rule 32 petition"; (ii) those that "clearly

10  relate to strategic decisions by the respective attorneys and cannot properly be urged as

11  arguments supporting a claim of ineffective assistance of counsel"; (iii) those that "are

12  contrary to well-established caselaw and should not be raised because they cannot

13  legitimately be argued"; and (iv) those that "are either not supported by the facts of the case

14  or are completely meritless."  (Id. at 311-12.)  Levitt further argued that, although she had

15  not performed deficiently, she had requested permission to withdraw and Petitioner had

16  expressed dissatisfaction with her.  On the basis of these two factors, Levitt argued that the

17  PCR court's "decision to appoint new counsel was originally the correct one and should have

18  remained intact."  (Id. at 311.)  Levitt acknowledged that she had not requested funds for an

19  investigator in preparing the  PCR petition because "[n]ot every case necessitates hiring

20  expert witnesses or investigators when an attorney can conduct such investigation herself."

21  (Id. at 312.)  She asserted that the affidavits attached to the petition demonstrated that an

22  investigation had been undertaken with respect to the two issues raised in the petition.  (Id.)

23       That same day, May 7, 1997, Petitioner (through Ryan) sought interlocutory review

24  via a special action petition in the Arizona Supreme Court.  (SA doc. 3.)  On May 9, 1997,

25  the Arizona Supreme Court stayed all proceedings in the PCR court and appointed Ryan to

26  represent Petitioner in the special action proceeding.  (SA doc. 4.)  On June 27, 1997, the

27  Arizona Supreme Court issued an order accepting jurisdiction of Petitioner's special action

28  but holding that the PCR court had not exceeded its jurisdiction or acted arbitrarily in

vacating its previous order allowing Levitt to withdraw as counsel. (SA doc. 11.) Although denying Petitioner's request to vacate the order reinstating Levitt as PCR counsel, the court directed that Levitt could file a "supplemental" PCR petition raising any additional claim "that, in her professional judgment, is not precluded and has merit, even though it may not have been included in her first petition for post-conviction relief." (Id.) Levitt subsequently filed a supplemental petition, which raised six additional claims – four of which were identified as "Additional Issues Petitioner Wishes to Raise" that Levitt described as either precluded or meritless and not "in good faith" arguable by counsel. (ROA III at 7-8.) The PCR court denied the supplemental petition, Levitt filed a supplemental PR, and the Arizona Supreme Court summarily denied review of both the PR and the supplemental PR.

**Discussion**

Petitioner argues that any procedural default committed by Levitt is excused because she never established an attorney-client relationship with him and, due to "irreconcilable conflicts," was not acting as his agent. (Dkt. 49 at 10.) Petitioner argues that a constructive denial of counsel occurred here because: (i) Levitt never met to confer with him before or after filing the PCR Petition, (ii) none of the issues raised (or not raised) in that petition were ever discussed with him; and (iii) Levitt prepared and filed the PCR Petition without his approval. (Id. at 11, 14.)

Generally, cause exists only when "some objective factor external to the defense impeded counsel's efforts to comply with a state procedural rule." Murray, 477 U.S. at 488. Because an attorney, as the agent of the client, is not external to the defense, attorney inadvertence and ignorance rarely provides cause for a default. Coleman, 501 U.S. at 753. The exception to this rule is where the attorney's neglect violates a defendant's Sixth Amendment right to the effective assistance of counsel. Id. at 753-54. Thus, the ineffective assistance of counsel can establish sufficient cause only when it rises to the level of an independent constitutional violation. Coleman, 501 U.S. at 755. When a petitioner has no constitutional right to counsel, there can be no constitutional violation arising out counsel's ineffectiveness. Id. at 752.

1    Although Petitioner asserts that he is not alleging ineffectiveness of PCR counsel as

2  cause, the complained-of acts by Levitt are, in essence, precisely that.  As such, Levitt's

3  representation of Petitioner during the PCR proceeding necessarily fails to establish cause

4  because there is no constitutional right to counsel in state PCR proceedings.  See

5  Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Murray v. Giarratano, 492 U.S. 1, 7-12

6  (1989) (the Constitution does not require states to provide counsel in PCR proceedings even

7  when the putative petitioners are facing the death penalty); Bargas v. Burns, 179 F.3d 1207,

8  1215 (9th Cir. 1999) (holding that ineffective assistance of counsel in post-conviction

9  proceeding cannot constitute cause); Bonin v. Vasquez, 999 F.2d 425, 429-30 (9th Cir. 1993)

10  (refusing to extend the right of effective assistance of counsel to state collateral proceedings);

11  Harris v. Vasquez, 949 F.2d 1497, 1513-14 (9th Cir. 1990).

12    The fact that the PCR proceeding was Petitioner's first and only opportunity to assert

13  claims of ineffective assistance of trial and appellate counsel does not change the analysis.

14  In Evitts v. Lucey, 469 U.S. 387, 396 (1985), the Court held that a petitioner is entitled to

15  effective assistance of counsel on a first appeal as of right.  However, since Evitts was

16  decided, the courts have clarified that it's holding applies strictly to a first appeal as of right,

17  even if particular types of claims could not have been raised in that appeal, because there is

18  no constitutional right to counsel in state PCR proceedings.  See Finley, 481 U.S. at 558;

19  Ellis v. Armenakis; 222 F.3d 627, 633 (9th Cir. 2000); Moran v. McDaniel, 80 F.3d 1261,

20  1271 (9th Cir. 1996); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996) (ineffective

21  assistance of counsel claim defaulted for not being raised in first habeas petition, even though

22  the same counsel represented petitioner in both proceedings, because no right to counsel in

23  habeas proceedings); Jeffers v. Lewis, 68 F.3d 299, 300 (9th Cir. 1995) (en banc) (plurality)

24  (ruling an Arizona petitioner had "no Sixth Amendment right to counsel during his state

25  habeas proceedings even if that was the first forum in which he could challenge

26  constitutional effectiveness on the part of trial counsel"); see also Evitts, 469 U.S. at 396 n.7

27  (noting that discretionary appeals are treated differently because there is no right to counsel).

28  Petitioner's argument fails because there is no constitutional right to counsel for PCR

1  proceedings even if it was his first opportunity to raise an ineffective assistance of counsel
2  claim.

3  Petitioner relies on Hollis v. Davis, 941 F.2d 1471 (11th Cir. 1991), in support of his
4  argument that "[a] habeas petitioner must be deemed to establish cause for a default when
5  he/she can demonstrate that it was caused by a lawyer acting outside of the agency
6  relationship."  (Dkt. 49 at 8.)  In Hollis, trial counsel did not challenge the exclusion of
7  blacks from the jury pool.  Trial counsel later testified that he did not know that it was illegal
8  to exclude blacks from jury service.  Id. at 1476.  The Hollis court listed a number of possible
9  sources for counsel's belief, including the "possibility that [trial counsel] knew of the right,
10  but didn't raise it out of fear for his own practice and reputation."  Id. at 1478.  The Eleventh
11  Circuit found that if it were shown that counsel did not challenge the jury's composition out
12  of fear of social ostracism or loss of clients, it would constitute cause for procedural default.
13  Id. at 1479.

14  Petitioner's situation in the present case is distinguishable from Hollis.  The default
15  in Hollis was caused by trial, not PCR, counsel, and there is no allegation here that Levitt
16  failed to fairly present claims because she feared social ostracism or loss of clients.  Rather,
17  Petitioner complains that Levitt failed to raise claims because she was incompetent and failed
18  to sufficiently communicate with him.  Such complaints amount to a claim of ineffectiveness,
19  which, as already stated, cannot establish cause.  Indeed, if the Court were to accept
20  Petitioner's argument, then any PCR proceeding in which a petitioner challenged the
21  competency of, or sufficiency of communication with, PCR counsel would be suspect.
22  Because there is no right to the effective assistance of PCR counsel, the Court must reject this
23  allegation of cause.

24  Similarly, the Court finds the decision in Manning v. Foster, 224 F.3d 1129 (9th Cir.
25  2000), to be distinguishable.  In Manning, the Ninth Circuit held that a "conflict of interest,
26  independent of a claim of ineffective assistance of counsel . . . constitute[s] cause where the
27  conflict *caused the attorney to interfere with the petitioner's right to pursue his habeas*
28  *claim.*"  224 F.3d at 1134 (emphasis added).  In that case, trial counsel "misled [Manning]

1   in such a way as to prevent him from claiming that [trial counsel's] assistance had been

2   ineffective." <u>Id.</u> at 1132.  Consequently, "there was a clear conflict between Manning's

3   interest in presenting and prevailing in his ineffective assistance claim and [trial counsel's]

4   interest in protecting himself from the damage such an outcome would do to his professional

5   reputation and from exposure to potential malpractice liability or bar discipline." <u>Id.</u> at 1134.

6        Unlike in <u>Manning</u>, Levitt did not affirmatively mislead Petitioner or deny him access

7   to a post-conviction proceeding.  Her actions in representing Petitioner were not adverse to

8   him or prompted by self-interest.  Moreover, because Levitt was appointed to prepare a PCR

9   petition, and Petitioner had no right to the effective assistance of such counsel, any alleged

10  ineffectiveness by her did not pose the type of conflict evident in <u>Manning</u>, wherein trial

11  counsel had "great incentives to prevent a client from prevailing in an ineffective assistance

12  claim." <u>Id.</u>  Levitt filed a petition pursuant to Arizona's Rule 32, raising the claims she

13  believed, rightly or wrongly, to be meritorious.  "[T]he mere fact that counsel failed to

14  recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing

15  it, does not constitute cause for a procedural default." <u>Poland v. Stewart</u>, 169 F.3d 573, 587

16  (9th Cir.1999) (citing <u>Murray</u>, 477 U.S. at 486).

17       Finally, the Court finds no merit in Petitioner's contention that due process requires

18  PCR counsel to be effective.  Petitioner cites no case, and the Court has found none, which

19  holds that a state is required by the federal constitution to provide counsel in PCR

20  proceedings.  The fact that a state may, "as a matter of legislative choice," <u>Ross v. Moffitt</u>,

21  417 U.S. 600, 618, (1974), provide for counsel in discretionary appeals following a first

22  appeal of right does not extend the Sixth Amendment's guarantee of effective counsel to

23  discretionary appeals.  <u>See</u> <u>Evitts</u>, 469 U.S. at 394, 397 n.7; <u>Finley</u>, 481 U.S. at 559 (where

24  a state provides a lawyer in a state post-conviction proceeding, it is not "the Federal

25  Constitution [that] dictates the exact form such assistance must assume," rather, it is in a

26  state's discretion to determine what protections to provide).  Further, the Ninth Circuit has

27  held explicitly that "ineffective assistance of counsel in habeas corpus proceedings does not

28  present an independent violation of the Sixth Amendment enforceable against the states

1   through the Due Process Clause of the Fourteenth Amendment." Bonin, 77 F.3d at 1160.

2   Because Petitioner's PCR proceeding took place after his appeal of right, it was a

3   discretionary proceeding that did not confer a constitutional right to the effective assistance

4   of counsel.  Thus, even assuming PCR counsel's performance did not conform to minimum

5   standards, it did not violate the federal constitution and cannot excuse the procedural default

6   of any claims.

7       Petitioner has not shown cause for his procedural defaults.  Therefore, the Court

8   declines to address prejudice.  See Thomas v. Lewis, 945 F.2d 1119, 1123 n.10 (9th Cir.

9   1991).  In addition, the Court finds no disputed issues of fact warranting an evidentiary

10  hearing on these issues.  See Campbell v. Blodgett, 997 F.2d 512, 524 (9th Cir. 1992) ("An

11  evidentiary hearing is not necessary to allow a petitioner to show cause and prejudice if the

12  court determines as a matter of law that he cannot satisfy the standard.").  Petitioner's request

13  for a hearing on cause and prejudice is therefore denied.

14  **C.**     **Fundamental Miscarriage of Justice**

15      If a petitioner cannot meet the cause and prejudice standard, the Court still may hear

16  the merits of procedurally defaulted claims if the failure to hear the claims would constitute

17  a "fundamental miscarriage of justice."  Sawyer, 505 U.S. at 336.  Petitioner asserts that a

18  fundamental miscarriage of justice will occur if his defaulted claims are not considered on

19  the merits because he is innocent of premeditated murder.  Specifically, he argues that, but

20  for counsel's ineffectiveness at trial in failing to present evidence of an impulsive personality

21  trait, no reasonable juror would have found the element of premeditation.  To establish a

22  fundamental miscarriage of justice on this basis, Petitioner must support his allegation of

23  constitutional error with new reliable evidence, such as exculpatory scientific evidence,

24  trustworthy eyewitness accounts or critical physical evidence, that was not presented at trial.

25  Schlup v. Delo, 513 U.S. at 324.

26      Petitioner proffers opinions from two new experts, who conclude that Petitioner's

27  neurologic deficits caused him to act reflexively at the time of the offense.  (Dkt. 49, ex. 1

28  at 10; dkt. 64, ex. 3 at 7.)  Arizona law permits a defendant to present evidence to show that

1    he has a character trait for acting reflexively, rather than reflectively, for the purpose of

2    challenging a finding of premeditation, i.e., to show that he did not actually reflect after

3    forming the requisite intent.  See State v. Christensen, 129 Ariz. at 35-36, 628 P.2d at 583-

4    84; Vickers v. Ricketts, 798 F.2d 369, 371 (9th Cir. 1986); see also State v. Dann, 205 Ariz.

5    557, 565, 74 P.3d 231, 239 (2003) (citing cases); State v. Thompson, 204 Ariz. 471, 427-28,

6    65 P.3d 420, 478-79 (2003) (premeditation means that the defendant intended to kill or knew

7    that he would kill and that, after forming intent or knowledge, he actually reflected on the

8    decision before killing, thus differentiating premeditated murder from second degree

9    murder); State v. Willoughby, 181 Ariz. 530, 539, 892 P.2d 1319, 1328 (1995) (same).

10           In Christensen, the defendant sought, pursuant to Rule 404(a)(1) of the Arizona Rules

11   of Evidence, admission of expert testimony regarding his tendency to act without reflection.

12   The Arizona Supreme Court held it was error to exclude such testimony because

13   "establishment of [this character trait] tends to establish that appellant acted impulsively.

14   From such a fact, the jury could have concluded that he did not premeditate the homicide."

15   Id. at 35, 628 P.2d at 583.  The holding was limited, however, in that an expert *cannot* testify

16   to whether the defendant was acting impulsively at the time of the offense.  Id. at 35-36, 628

17   P.2d at 583-84.  In addition, Arizona has long rejected the affirmative defense of diminished

18   capacity.  State v. Mott, 187 Ariz. 536, 540-41, 931 P.2d 1046, 1050-51 (1997) (citing State

19   v. Schantz, 98 Ariz. 200, 212-13, 403 P.2d 521, 529 (1965)); see also Clark v. Arizona, 126

20   S. Ct. 2709 (2006) (upholding constitutionality of Arizona's Mott rule).  Consequently, a

21   defendant cannot, during trial, present evidence of mental disease or defect to show that he

22   was *incapable* of forming a requisite mental state for a charged offense.  Mott, 187 Ariz. at

23   540, 931 P.2d at 1050; Schantz, 98 Ariz. at 213, 403 P.2d at 529.

24           It is clear from a review of Arizona law that evidence of impulsivity is admissible only

25   to show a general character trait; an expert's opinion that a defendant acted impulsively at

26   the time of the offense or lacked the ability to premeditate is not admissible.  In light of the

27   limited nature of the impulsivity evidence Petitioner argues should have been presented by

28   trial counsel, and after reviewing the record, the Court concludes there was sufficient other

1    evidence from which a reasonable juror could find that Petitioner acted with premeditation.

2    In particular, Petitioner told police he and his co-defendant, Randy Brazeal, raped the girls

3    and said Brazeal told him, "Now we got to kill them." (Dkt. 59, ex. F at 12.) Petitioner also

4    stated:

5        [Petitioner]:   This didn't start out . . . like ah . . . somethin' bad.

6        [Police]:       Huh-hum.

7        [Petitioner]:   And I wasn't going to violate them myself, but the boy .
                         . . ah . . . I don't know, man. (inaudible).
8
         [Police]:       This is all Randy's idea?
9
         [Petitioner]:   Yes, And I, I, I don't have any reason to tell you . . . a lie.
10                        Yes, it was.  Yes.  I was drinking very heavily and yes,
                         I allowed myself to . . . I don't know.  That's what I
11                        don't understand.

12       [Police]:       Okay.  Whose knife was it, Richard?

13       [Petitioner]:   Ah . . . mine.
                 . . . .
14
         [Police]:       Okay.  What happened then, after that, after Randy told
15                        you that he wanted to kill them?

16       [Petitioner]:   He grabbed one and I had to grab the other one.

17       [Police]:       Okay.  So . . .

18       [Petitioner]:   I've never done anything like that before and I . . .
                         choked 'em.  There was one foot moving though I knew
19                        they was brain dead but I was getting scared.

20   (Id. at 8-9.)  Petitioner's own statement provides evidence from which a reasonable juror

21   could determine that he reflected on the decision to kill the girls after Brazeal told him they

22   needed to be killed, presumably to eliminate them as witnesses.  In addition, if defense

23   counsel had presented evidence of an impulsive character trait, this would have opened the

24   door to rebuttal from two of Petitioner's ex-wives that he had, on different occasions,

25   threatened to kill them and throw their bodies down mine shafts (RT 6/18/92 at 74-77, 100-

26   03), as happened to the victims in this case.  See Ariz. R. Evid. 405; cf. LaGrand v. Stewart

27   133 F.3d 1253, 1272 (9th Cir. 1998) (observing that decision not to present impulsivity

28   defense not ineffective where it would open door to defendant's prior record).  The Court

1   concludes that Petitioner's new expert evidence fails to establish that *no* reasonable juror

2   would have found him guilty of premeditated murder. Because Petitioner has failed to make

3   the requisite showing of actual innocence, he has not established that a fundamental

4   miscarriage of justice will result if his defaulted claims are not considered on the merits.

5           Petitioner also alleges there will be a fundamental miscarriage of justice if his

6   defaulted sentencing-related claims are not considered on the merits because he is innocent

7   of the death penalty. To establish a fundamental miscarriage of justice on this basis,

8   Petitioner must show by clear and convincing evidence that, but for a constitutional error, no

9   reasonable factfinder would have found the existence of any aggravating circumstance or

10  some other condition of eligibility for the death sentence under the applicable state law.

11  Sawyer, 505 U.S. at 336. In Arizona, eligibility for the death penalty is predicated on the

12  existence of at least one statutory aggravating factor. See LaGrand v. Stewart, 133 F.3d at

13  1262; Villafuerte v. Stewart, 111 F.3d 616, 629 (9th Cir. 1997).

14          Petitioner's sole argument that he is innocent of the death penalty is that "no

15  reasonable sentencer would have imposed the death sentence if the omitted mitigating

16  evidence was presented at sentencing." (Dkt. 49 at 33.) Petitioner does not even attempt to

17  demonstrate that no reasonable factfinder would have found two of the aggravating factors

18  at issue, the finding of which render him eligible for the death penalty. See Sawyer, 505 U.S.

19  at 347 (focus is on eligibility, not on additional mitigation); LaGrand, 133 F.3d at 1262

20  ("actual innocence of the death penalty must focus on eligibility for the death penalty, and

21  not on additional mitigation"); Villafuerte, 111 F.3d at 629. For that reason, Petitioner

22  cannot establish a fundamental miscarriage of justice based on innocence of the death

23  penalty.

24  **D.     Plainly Meritless Claims**

25          Pursuant to 28 U.S.C. § 2254(b)(2), the Court may dismiss plainly meritless claims

26  regardless of whether the claim was properly exhausted in state court. See Rhines v. Weber,

27  125 S. Ct. at 1535 (holding that a stay is inappropriate in federal court to allow claims to be

28  raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

1    After review of Petitioner's amended petition, the Court concludes that the following claims
2    are plainly meritless.  Accordingly, each will be dismissed with prejudice.

3        **Claim I**

4        Petitioner alleges a violation of his Sixth, Eighth and Fourteenth Amendment rights
5    because he was not afforded a jury trial on the aggravating factors that rendered him eligible
6    for the death penalty.  In Ring v. Arizona, 536 U.S. at 609, the Supreme Court found that
7    Arizona's aggravating factors are an element of the offense of capital murder and must be
8    found by a jury.  However, in Schriro v. Summerlin, 524 U.S. 348 (2004), the Court held that
9    Ring does not apply retroactively to cases already final on direct review.   Because
10   Petitioner's direct review was final prior to Ring, he is not entitled to federal habeas relief
11   premised on that ruling.

12       **Claim J**

13       Petitioner alleges that Arizona's capital sentencing scheme fails to adequately channel
14   sentencing discretion because first degree murder is too broadly defined, the "especially
15   heinous, cruel or depraved" aggravating factor fails to narrow the scope of capital offenses,
16   there is an absence of objective standards for weighing aggravating and mitigating
17   circumstances, and the Arizona Supreme Court failed to conduct a meaningful
18   proportionality review, in violation of the Eighth and Fourteenth Amendments.  The Arizona
19   Supreme Court rejected this claim on direct appeal.  Stokely, 182 Ariz. at 516, 898 P.2d at
20   465.

21       In Smith (Bernard) v. Stewart, the Ninth Circuit summarily rejected the petitioner's
22   claims regarding constitutionality of Arizona's death penalty, including allegations that
23   Arizona's statute does not properly narrow the class of death penalty recipients, that Arizona
24   lacks proportionality review, that sentencing judges do not have proper guidance, and that
25   the death penalty constitutes cruel and unusual punishment.  140 F.3d 1263, 1271 (9th Cir.
26   1998).  Similarly, in Ortiz v. Arizona, the court noted that "[a]lthough the Constitution
27   requires that the states devise procedures to guide a sentencer's discretion, the absence of
28   specific standards instructing the sentencer how to weigh the aggravating and mitigating

1   factors does not render a death penalty statute unconstitutional." 149 F.3d 923, 944 (9th Cir.

2   1998) (citing Zant v. Stephens, 462 U.S. 862, 880 (1983)). Finally, in Walton v. Arizona,

3   the U.S. Supreme Court expressly found that the Arizona Supreme Court's construction of

4   the "especially heinous, cruel and depraved" aggravating factor meets constitutional

5   requirements by providing sufficient guidance to the sentencer. 497 U.S. 639, 654 (1990),

6   overruled on other grounds by Ring v. Arizona, 536 U.S. 584 (2002).

7       Regarding proportionality review, the federal constitution is not implicated where

8   state law does not provide for such review. Pulley v. Harris, 465 U.S. 37, 43-44, 50-51

9   (1984). In State v. Salazar, 173 Ariz. 399, 416-17, 844 P.2d 566, 583-84 (1992), the Arizona

10  Supreme Court held that proportionality reviews would no longer be conducted in death

11  penalty cases. Petitioner's appeal was decided subsequent to Salazar. Thus, he possessed

12  no constitutional right to a proportionality review at the time of his appeal and, consequently,

13  cannot show that the Arizona Supreme Court's decision denying relief on this claim was

14  contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. §

15  2254(d)(1).

16  **Claim K**

17      Petitioner argues generally that the death penalty was imposed arbitrarily in his case

18  when compared with other cases involving either a sentence of death or a sentence of life

19  imprisonment, in violation of the Eighth and Fourteenth Amendments. The Arizona Supreme

20  Court expressly denied this claim, stating that Arizona's "death penalty statute narrowly

21  defines death-eligible persons as those convicted of first degree murder, where the state has

22  proven one or more statutory aggravating factors beyond a reasonable doubt." Stokely, 182

23  Ariz. at 516, 898 P.2d at 465.

24      The Ninth Circuit has previously rejected the claim that Arizona applies its death

25  penalty in an arbitrary, irrational and disproportionate fashion, Ortiz, 149 F.3d at 944, and

26  Petitioner is not constitutionally entitled to a proportionality comparison of his case to other

27  cases, Pulley, 465 U.S. at 43-44. Furthermore, in Petitioner's case, the sentencer found three

28  aggravating factors that rendered him death-eligible, thereby providing a rational basis for

1   imposing the death penalty.  Although Petitioner challenges application of the "especially

2   heinous, cruel or depraved" factor in Claims D and E, he does not dispute the validity of the

3   other two factors: he was an adult at the time the crimes were committed and the victims

4   were under the age of fifteen, A.R.S. § 13-703(F)(9), and he was convicted of one or more

5   other homicides which were committed during the commission of the offense, A.R.S. § 13-

6   703(F)(8).  Accordingly, Petitioner cannot establish that the death penalty in his case was

7   imposed in an arbitrary and irrational manner or that the Arizona Supreme Court's resolution

8   of this claim was contrary to, or an unreasonable application of, clearly established federal

9   law.  28 U.S.C. § 2254(d)(1).

10          **Claim M**

11          Petitioner asserts that execution following an extraordinarily lengthy period of

12   incarceration serves no valid penological purpose and therefore violates the Eighth and

13   Fourteenth Amendments. The Supreme Court has not decided whether lengthy incarceration

14   prior to execution can constitute cruel and unusual punishment.  See Lackey v. Texas, 514

15   U.S. 1045 (1995) (mem.) (Stevens, J. & Breyer, J., discussing denial of certiorari and noting

16   the claim has not been addressed).  In contrast, circuit courts including the Ninth Circuit,

17   hold prolonged incarceration under a sentence of death does not offend the Eighth

18   Amendment. See McKenzie v. Day, 57 F.3d 1493, 1493-94 (9th Cir. 1995) (en banc); White

19   v. Johnson, 79 F.3d 432, 438 (5th Cir. 1996) (delay of 17 years); Stafford v. Ward, 59 F.3d

20   1025, 1028 (10th Cir. 1995) (delay of 15 years).  Moreover, because the Supreme Court has

21   never held that prolonged incarceration violates the Eighth Amendment, Petitioner cannot

22   establish a right to federal habeas relief under 28 U.S.C. § 2254(d).  See Allen v. Ornoski,

23   435 F.3d 946, 958-60 (9th Cir. 2006).

24                                    **CONCLUSION**

25          The Court finds that Claims A-2, A-3, B-2, D, F-1, F-2, F-3, H-1, H-2, and L are

26   procedurally defaulted and that Petitioner has failed to establish cause and prejudice or a

27   fundamental miscarriage of justice to overcome the defaults.  Accordingly, these claims are

28   procedurally barred and will be dismissed with prejudice.  The Court further finds that

1    Claims B-1, I, J, K, and M are plainly meritless; these claims will also be dismissed with

2    prejudice.  Petitioner has fairly presented and actually exhausted Claims A-1, C, E, and G;

3    these claims will be decided on the merits in a separate order following additional briefing.

4            Accordingly,

5            **IT IS ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**:

6    (a) Claims A-2, A-3, B-2, D, F-1, F-2, F-3, H-1, H-2, and L based on a procedural bar; and

7    (b) Claims B-1, I, J, K, and M on the merits as a matter of law.

8            **IT IS FURTHER ORDERED** that, no later than **sixty (60) days** following entry of

9    this Order, Petitioner shall file a Memorandum regarding the merits *only* of Claims A-1, C,

10   E, and G.  The Merits Memorandum shall specifically identify and apply appropriate AEDPA

11   standards of review *to each claim for relief* and shall not simply restate facts and argument

12   contained in the amended petition.  Petitioner shall also identify in the Merits Memorandum:

13   (1) each claim for which further evidentiary development is sought; (2) the facts or evidence

14   sought to be discovered, expanded or presented at an evidentiary hearing; (3) why such

15   evidence was not developed in state court; and (4) why the failure to develop the claim in

16   state court was not the result of lack of diligence, in accordance with the Supreme Court's

17   decision in <u>Williams v. Taylor</u>, 529 U.S. 420 (2000).

18           **IT IS FURTHER ORDERED** that no later than **forty-five (45) days** following the

19   filing of Petitioner's Memorandum, Respondents shall file a Response Re: Merits.

20           **IT IS FURTHER ORDERED** that no later than **twenty (20) days** following the

21   filing of Respondents' Response, Petitioner may file a Reply.

22           **IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), Petitioner or

23   Respondents file a Motion for Reconsideration of this Order, such motion shall be filed

24   within **fifteen (15) days** of the filing of this Order.  The filing and disposition of such motion

25   shall not toll the time for the filing of the merits briefs scheduled under this Order.

26           **IT IS FURTHER ORDERED** that the Clerk of the Court shall, pursuant to Fed. R.

27   Civ. P. 25(d), substitute, as a Respondent, Dora B. Schriro for Terry Stewart as Director of

28   the Arizona Department of Corrections.  The Clerk shall update the title of this case to reflect

1    this substitution.

2         **IT IS FURTHER ORDERED** that the Clerk of Court forward a courtesy copy of this

3    Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, Arizona

4    85007-3329.

5         DATED this 30th day of August, 2006.

6                                                            FRANK R. ZAPATA

7                                                            United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28